ENVIRONMENTAL IMPROVEMENT DIVISION OF the NEW MEXICO HEALTH AND ENVIRONMENT DEPARTMENT, Plaintiff-Appellant,

v.

Ray MARSHALL, Secretary of the United States Department of Labor, et al., Defendants-Appellees.

No. 79–2246.

United States Court of Appeals, Tenth Circuit.

Argued May 11, 1981.

Decided Oct. 14, 1981.

Bruce S. Garber, Asst. Atty. Gen., State of N. M., Santa Fe, N. M. (Louis W. Rose, Asst. Atty. Gen., Environmental Improvement Div., Santa Fe, N. M., with him on the brief), for plaintiff-appellant.

Patrick Tyson, Asst. Counsel for State Plans, U. S. Dept. of Labor, Washington, D.C. (Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Allen H. Feldman, Counsel for Appellate Litigation, Washington, D.C., James E. White, Regional Sol., Dallas, Tex., and Olympia Pachares, Washington, D.C., with him on the brief), for defendants-appellees.

Before SETH, Chief Judge, HOLLOWAY, Circuit Judge, and KERR, District Judge[*].

SETH, Chief Judge.

This appeal concerns the Secretary of Labor's authority to supervise and concurrently enforce a state occupational safety and health plan submitted to the Occupational Safety and Health Administration (OSHA) by the State of New Mexico. Basically, the state argues that under the circumstances presented here it is entitled to exclusive authority to enforce its program. The trial court granted summary judgment for the Secretary.

The state prepared and submitted a plan whereby it would accomplish the aims and purposes of the Occupational Safety and Health Act. This was submitted to OSHA and received initial approval in December of 1975 as a developmental plan. A description of the plan, a list of the developmental steps, and notice of the prescribed level of federal enforcement authority were published at 29 C.F.R. §§ 1952.360–364. Federal authority for enforcement of standards has been in effect since initial approval. 29 C.F.R. § 1952.362; 29 C.F.R. § 1954.3(a)(1). The state plan has not been certified as having completed its developmental steps under 29 C.F.R. § 1902.34. No indication

[*] Honorable Ewing T. Kerr, United States Senior District Judge for the District of Wyoming, sitting by designation.

appears in 29 C.F.R. Part 1952 that the plan has been determined "operational" pursuant to 29 C.F.R. § 1954.3. Thus, the plan was within a period of active federal involvement prior to final approval.

In May of 1978 the then Acting Regional Director of OSHA entered into an agreement with the state which purported to withdraw federal enforcement activity over issues covered by the state plan and otherwise not within the exclusive jurisdiction of the federal officials. However, a new Regional Director rescinded this agreement in December 1978. In his letter informing the state of his proposed action the new Regional Director indicated that he could not recommend the state as "operational." His stated reasons included the observations that all the developmental steps had not been completed, the state lacked sufficient personnel to enforce its standards, the state's performance in conducting compliance inspections was not at an acceptable level, and the state's operational procedures were not in accordance with the OSHA Field Operations Manual. After a meeting with state officials he proposed a new memorandum of understanding which would have reinstated concurrent federal enforcement. In response the state brought this suit to compel OSHA to honor the initial memorandum and withdraw concurrent federal enforcement authority. Appellant argues essentially that the first memorandum of understanding was an "operational status agreement" which could be amended or terminated only upon formal notice and an opportunity for a hearing as set out in 29 C.F.R. § 1954.3.

The district court upon cross-motions for summary judgment found for the Secretary. The court reasoned that none of the injuries alleged by the state were sufficient to confer standing to challenge OSHA's action. On appeal, the state contends that the court improperly entered summary judgment and that the court erroneously held that standing was lacking.

The process for approval of state plans embodied in the regulatory scheme contemplates several steps. The Secretary will grant initial approval to a state plan submitted under § 667(b) as was done here if in his judgment the plan satisfies several standards which would render it at least as effective as the federal regulatory program. 29 U.S.C. § 667(c). Even a plan which could not be immediately implemented may receive initial approval if the Secretary finds that the proposed plan could reasonably meet required standards within a three-year period after its commencement. 29 C.F.R. § 1902.2(b). Such a plan is called a "developmental plan." This was apparently the status of the state's plan here concerned.

Following initial approval there is a period of active supervision and monitoring of the plan's operations by OSHA. The statute is clear in its direction that during the three-year period following commencement of a state plan the Assistant Secretary may exercise his discretionary enforcement authority over any or all the matters covered by the plan. 29 U.S.C. § 667(e). *See also* 29 C.F.R. § 1954.3. The state has three years in which to complete such steps in the plan as approved. 29 C.F.R. § 1902.33. *See also* 29 C.F.R. § 1902.34(a). Before a plan can receive final approval the Assistant Regional Director must certify to the Assistant Secretary that the state has completed all its developmental steps per plan. 29 C.F.R. § 1902.34.

Prior to a determination of final approval as outlined in 29 U.S.C. § 667(e), OSHA may enter into an agreement with a state whereby its exercise of concurrent enforcement over particular issues covered by the plan may be reduced and the state's authority to investigate complaints and issue citations accordingly increased. 29 C.F.R. §§ 1954.3, 1902.20(b)(1)(iii). Such an agreement is commonly called an "operational status agreement." Any determination of "operational status" and any procedural agreement based upon such a finding must be approved by the Assistant Secretary. Notice of such an agreement is published in the Federal Register and a description of the level of federal enforcement is published in the Code of Federal Regulations. The

regulations allow for termination of such an agreement and reinstatement of federal enforcement should the Assistant Secretary determine such action is necessary to assure occupational safety and health protection to employees (29 C.F.R. § 1954.3(c)(3)) upon notice and hearing. A denial of final approval, a decision to withdraw such approval, or a rejection of a state plan may be reviewed by the appropriate circuit court. 29 U.S.C. § 667(g).

■ The determination of the nature of this agreement in issue is one to be made by resort to the regulations, and is basically a question of law. The formal procedures to be taken with respect to a determination of operational status are set out in 29 C.F.R. § 1954.3. This agreement must be fitted into the several regulations to determine where it was in the progression. This, as mentioned, is basically a legal question. The memorandum in question does not contain all the information required and the Assistant Secretary did not approve the agreement. Nor was the procedural agreement noticed in the Federal Register and a description thereof published at 29 C.F.R. Part 1952. We therefore must conclude that the memorandum of understanding was not an operational status agreement. At most it was an informal interagency agreement which expressed a temporary delineation of enforcement authority. The district court did not misconstrue the evidence or otherwise improperly consider the motions for summary judgment.

■ The action complained of, the termination in 1978, occurred during the statutory period for active federal supervision and enforcement of the state plan. The agency action to reinstate federal concurrent enforcement did not constitute a rejection or withdrawal of approval such as would allow for formal hearing and judicial review. *See* 29 U.S.C. § 667(g). Rather, as stated above, the 1975 memoranda of understanding represented administrative determinations of the extent to which OSHA's statutorily granted concurrent jurisdiction will be exercised pending final approval of the New Mexico plan.

The Act provides that federal enforcement authority shall exist for at least three years following a state plan's commencement of operations. The statute vests the Secretary with broad discretion in the exercise of this enforcement authority. Thus, the Act specifically provides that after initial approval, but before final approval is granted, the Secretary "may, but shall not be required to" exercise concurrent enforcement authority. 29 U.S.C. § 667(e).

The Acting Regional Director's memorandum withdrew federal enforcement activity. This action, however, did not abrogate or revoke the authority vested in the Secretary to concurrently enforce standards during the statutory period prior to a determination of final approval. As stated in the regulations: "That section [667(e)] prescribes a period of concurrent Federal-State enforcement authority which must last for at least three years . . . ." 29 C.F.R. § 1954.3(a)(1). And the prescription of the level of federal enforcement over the New Mexico plan provided in 29 C.F.R. § 1952.-362:

> "[T]he present level of Federal enforcement in New Mexico will not be diminished until the State has been determined to be operational under the meaning of 29 C.F.R. 1954.3. Thereafter, the level of Federal enforcement will continue to be exercised to the degree necessary to assure occupational safety and health protection to employees in the State of New Mexico."

We have held above that New Mexico has not been determined "operational" pursuant to the cited regulation. As federal enforcement authority is mandated until such a determination is made the Division cannot complain that OSHA exercised such authority. The district court properly refused to take cognizance of the Division's complaints about the statutorily prescribed activities of the Secretary. We therefore hold that appellant fails to state a cause of action upon which relief can be granted.

Section 667(g) of the Act provides for judicial review of final agency action. The

action complained of here was not final. The decision to reinstate federal enforcement was an interlocutory decision by OSHA. We have consistently held that such decisions are inappropriate for judicial review. *Utah International, Inc. v. Environmental Protection Agency*, 478 F.2d 126 (10th Cir.); *Amerada Petroleum Corp. v. Federal Power Comm.*, 231 F.2d 461 (10th Cir.).

We conclude that any dissatisfaction with OSHA's supervision of the New Mexico plan must be directed to that agency. OSHA has a statutory right to concurrently enforce the plan. The state plan has not been rejected, and federal concurrent jurisdiction is contemplated by the statute. Judicial review under the circumstances is inappropriate.

Given our disposition of this matter we need not consider the other issues nor the other grounds for the trial court's judgment.

AFFIRMED.